Paul Caltagirone, Esq. Assistant County Attorney, Dutchess
You ask whether a medical examiner may delegate to a licensed physician's assistant that portion of his duties under County Law, § 674 which consists of taking charge of a body at the place where it is found and if appropriate, to remove it; and if the delegation may not be made, whether a charter county may supersede section 674 by enacting a charter amendment authorizing the delegation to a physician's assistant.
County Law, § 671(1) imposes a duty upon a medical examiner to make inquiries into unnatural deaths within his jurisdiction. County Law, § 674, which prescribes the manner of conducting investigations into unnatural deaths occurring within the county, requires that a licensed physician "go at once to the place where the body is and take charge of it" (County Law, § 674[1]). In counties in which the office of coroner has been abolished, this would be the medical examiner, who by statute must be a physician and must also be qualified to perform autopsies and dissections (id., §§ 400[4-a], 674[1]). Where the office of coroner has not been abolished, this duty would be performed by the coroner or, when he is not a physician, jointly by the coroner and a coroner's physician (id., §§ 671[1], 673[2], 674).
While at the place where the body is found, a medical examiner must "fully investigate the essential facts concerning the death", take the names and addresses of witnesses, and before leaving the premises reduce all of those facts to writing (id., 674[2]). In addition, a medical examiner must take possession of portable objects found at the scene which, in his opinion, may be useful in establishing the cause of death (ibid.) and may remove the body if, in his judgment, an autopsy or other examination is required (id., § 674[1] and [3]).
The requirement of County Law, § 674 that a licensed physician go to the scene and take charge of the body was added by chapter 545 of the Laws of 1965. Prior to the enactment of that section, lay coroners as well as physicians had been performing those duties. The 1965 amendment was enacted specifically in response to a recommendation contained in an earlier report of the Law Revision Commission that these duties, including examining the body at the scene and determining whether the body should be removed for further examination, should be performed only by licensed physicians (Report of the Law Revision Commission, Leg Doc [1962], No. 65[A] ["Document"]; L 1965, ch 545).
Section 6542(1) of Article 131-B of the Education Law, enacted by chapter 1135 of the Laws of 1971, authorizes a registered physician's assistant to perform "medical services" under the supervision of a physician when those services are within the scope of practice of the physician. Supervision does not require the physical presence of the supervising physician at the place where the medical services are performed (Education Law, § 6542[3]). Public Health Law, § 3701(1) empowers the commissioner of health to promulgate regulations defining and restricting the duties which may be assigned to physicians' assistants, the degree of supervision required and the manner in which such duties may be performed. Neither the statute nor the regulations defines the term "medical services" (see, 10 NYCRR, Part 94, §§ 94.1, 94.2). However, both the legislative history of Article 131-B and the regulations clearly indicate that such term refers to the providing of health care services to patients of physicians in clinical settings (ibid; L 1971, ch 1135; Historical Note to Public Health Law, §3700 [McKinney's 1977]; Reynolds v Medical Staff,86 Misc.2d 418 [Sup Ct, Westchester Co, 1976]).
Based upon a review of the provisions and legislative histories of County Law, § 674 and Article 131-B of the Education Law, we are of the opinion that a medical examiner may not delegate to a licensed physician's assistant that portion of his duties under County Law, § 674 which consists of taking charge of and removing bodies. County Law, § 674
was added precisely for the purpose of ensuring that these specific duties be carried out only by licensed physicians (L 1965, ch 545; Document, supra). The enactment of that section represents a determination by the Legislature that the presence of a physician is required in the specific case of investigations into unnatural deaths (ibid.; County Law, §§ 400[4-a], 671[1], 673[2], 674). We do not believe that the Legislature, in later enacting Article 131-B, intended to supersede this requirement. A special statute providing for a particular class of cases is not repealed by a subsequent statute general in its terms, provisions and application, unless the intent to repeal it is manifest (McKinney's Statutes, § 396 [McKinney's 1971]). Furthermore, we believe that these specific duties of a medical examiner under section 674 do not involve the performance of "medical services" to patients as contemplated by Article 131-B and are not, therefore, within the scope of authorized duties of a physician's assistant (10 NYCRR,supra; L 1971, ch 1135; Historical Note to Public Health Law, §3700, supra; Reynolds v Medical Staff, supra). The section 674 duties are essentially investigative in nature and comprise part of a legal-medical inquiry undertaken at the place where the body is found for the purposes of establishing the cause of an unnatural death and determining whether further investigation is required (County Law, §§671, 673, 674).
In relation to your second inquiry, the first section of Article 17-A "Coroner, Coroner's Physician and Medical Examiner", provides that if a charter county enacts a charter law or local law in conflict with a provision of the article, the provision is not applicable in that county (§ 670). Section 2(b) of the County Law likewise authorizes charter counties by charter law or local law to supersede any conflicting provision of the County Law "unless a contrary intent is expressly stated in [the County Law]." (For a "contrary intent" expressly stated, see § 376.)
Both sections 2(b) and 670 of the County Law are authorizations for charter counties to enact local laws or charter laws superseding provisions of the County Law. Section 2(b) has general application to the provisions of the County Law. Section 670, however, was adopted as part of Article 17-A and deals specifically with coroners and medical examiners. We believe it was the intent of the Legislature that section 670, rather than 2(b) apply to the provisions of Article 17-A.
While section 670 authorizes charter laws and local laws by charter counties modifying the provisions of Article 17-A, we believe that an overriding State policy is evident that would prevent local action under section 670 to permit a medical examiner to have a physician's assistant carry out the investigative work called for and, when warranted, remove the body. (Removal would be for the purpose of an autopsy.) As noted earlier, Article 17-A was enacted on the recommendation of the Law Revision Commission. The Commission pointed out that the new article to be placed in the County Law was the final recommendation called for by the Legislature. Chapter 479 of the Laws of 1961 directed the Commission "to make a thorough study * * * of all laws * * * relating to the offices of coroner and medical examiner" (§ 1). The Commission was authorized to recommend changes that would eliminate antiquated or undesirable provisions and would bring the "statutes" into "harmony with modern conditions" (ibid.). Many of these provisions were in the Criminal Procedure Law, then the Code of Criminal Procedure (Report of the Law Revision Commission, Leg Doc [1965], No. 65[C], pp 13, 15; some were in the Public Health Law [ibid.], and some in the County Law [ibid.]).
We believe it is clear from the report of the Law Revision Commission that a decision was made to require a physician's presence at the site of a body to investigate an unnatural death.
In discussing the then current law and the need for change, the Commission report stated:
 "There is no requirement that a coroner be a physician, and a number of the coroners now in office are not physicians. In three counties, it is provided by special statute that the duties of coroner be performed by the district attorney.
 "It has been urged by the proponents of the two Model State Acts that the duties of a coroner or medical examiner require the special skills and knowledge of a physician qualified in pathology. This view is supported by much of the information obtained by the Commission in its study, as well as by statements submitted by representatives of the Medical Society of the State of New York at the public hearing. It is also clear, however, from information reported to the Commission, that legislation requiring such qualification throughout the state would impose unjustifiable financial burdens in the case of some counties. Compliance might indeed be impossible in many cases because of the limited number of qualified pathologists available for this work.
* * *
 "The present provision is permissive, and leaves to the coroner the decision whether employment of a physician is necessary. Where the coroner is not a physician, it is thus possible that appearances that would be significant to a physician may be destroyed or altered before the body is seen by a coroner's physician. The decision whether an autopsy or other examination is necessary, which should be made only by a physician, may be made by a person not qualified to judge. Nothing in the statute gives any official status to the diagnosis and report made by the coroner's physician.
 "An amendment of section 662 of the County Law proposed by the Commission requires that the duties of the office of coroner shall be discharged, together, by the coroner and a coroner's physician, in any case where the coroner is not a physician." Law Revision Commission, Leg Doc (1962), No 65(A). (These provisions did not become law until 1965.)
This decision by the Commission is reflected in the provisions of sections 671 et seq. In our opinion the Law Revision Commission in drafting section 670 did not intend to grant a charter county power to enact a charter law or local law to permit a nonphysician to take charge of a body in a case of unnatural death (§ 671[1]). Apparently, in recommending section 670 the Commission was in part preserving those charter county provisions that were in harmony with modern conditions. For example, the Commission noted that it was only in New York City and in "those counties having medical examiner systems of their own, such as Westchester, Nassau and Suffolk, that this officer is given authority broad enough to permit a thorough investigation of deaths * * *" (Report of Law Revision Commission, Leg Doc [1965], No. 65 [C], p 14). A medical examiner is by definition a physician, indicating that those systems preserved were in harmony with the expressed intent that a physician be at the scene of the body.
As our earlier discussion shows, the physician's assistant came into existence in this State in 1971, six years after the enactment of Article 17-A of the County Law. The physician's assistant belongs to the world of medical practice, which is a State matter. Medical practice is tangentially related to "unnatural deaths" in that a licensed physician is charged with making a final determination that a death was unnatural. Presumably, a physician's assistant could be trained to do much of the work that County Law, § 674 requires of a medical examiner or coroner's physician. In the present state of the applicable statutes, we believe it is not clear that the Legislature intended that a physician's assistant assist in this kind of work. Only the Legislature can provide for such use of physicians' assistants.
We conclude that a medical examiner may not delegate to a licensed physician's assistant that portion of his duties under County Law, §674 which consists of taking charge of and removing bodies, nor may a charter county by charter amendment or local law authorize the delegation of those duties to a physician's assistant.